**Gregory Ralph WILHOIT, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–87–454.**

Court of Criminal Appeals of Oklahoma.

April 16, 1991.

## ORDER

LANE, Presiding Judge.

Appellant was convicted of First Degree Murder, in Case No. CRF–86–8, in the District Court of Osage County, and sentenced to death, from which he has perfected his appeal to this Court, in Case No. F–87–454. On June 16, 1988, appellant filed with this Court a Motion for New Trial on Newly Discovered Evidence and Motion for Evidentiary Hearing Regarding New Evidence and Regarding Effectiveness of Trial Counsel. As per appellant's request, a ruling on this motion was held in abeyance until the defense experts could fully examine the bite-mark evidence. On February 23, 1990, appellant filed with this Court a Motion to Permit Additional Supplementation of Motion for New Trial on Newly Discovered Evidence and Supplementation of Record on Appeal which included the results of the experts' examinations of the bite-mark evidence.

On July 3, 1990, this Court remanded this case back to District Court of Osage County to conduct an evidentiary hearing to determine whether appellant should be afforded a new trial based upon the newly discovered evidence and possible ineffective assistance of counsel. The hearing on this matter was conducted August 28, 30, October 3, 4, and 5, and December 10, 1990, before the Honorable J.R. Pearman, district judge of Osage County. On March 25, 1991, Judge Pearman submitted his Findings of Fact and Conclusions of Law to this Court, which we adopt and incorporate in this matter.

■ A new trial based upon newly discovered evidence may be granted if the defendant can establish 1) that the evidence is material, 2) that it was not available at the time of trial, or if the evidence was available, the defendant could not, by the exercise of due diligence, have procured the same before trial, 3) that it is not cumulative, and 4) that there is a reasonable probability that the result at trial would have been different. *Sheppard v. State*, 731 P.2d 989 (Okl.Cr.1987). The district court found that the evidence was material but that appellant's counsel failed to exercise due diligence in procuring the evidence prior to trial. Based upon these findings, the district court found, and we agree, that the Motion for New Trial based upon newly discovered evidence must be denied.

■ As to appellant's claim that he was denied a fair trial because of ineffective assistance of counsel, he must be able to establish 1) that counsel's assistance was not reasonably effective, and 2) that his deficient performance denied the defendant a fair trial and that but for counsel's deficient performance, the result of the trial could possibly have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). At the evidentiary hearing, there was extensive evidence presented that trial counsel was suffering from alcohol dependence and abuse and brain damage during his representation of appellant. In fact, the Oklahoma Bar Association had found counsel's ability to function as a lawyer was noticeably impaired by alcohol during the time he was representing appellant. Trial counsel even stated in an affidavit that there was no strategic reason for his not pursuing the bite-mark evidence nor for not using a bite-mark expert. This omission is even less excusable in light of the fact that the Wilhoit family had hired a forensic odontologist who was available to examine the bite-mark evidence. Judge Pearman found that because of his failure to investigate the bite-mark evidence, appellant's counsel was deficient and that there is a reasonable probability that the result of the trial would have been different had the defense used an expert. The omission of this evidence cannot be considered a strategic defense tactic.

We find that appellant was denied a fair trial due to ineffective assistance of counsel. We agree with Judge Pearman, as stated in his Conclusions of Law, that "[i]t is imperative that the legal profession allow not even the appearance of misconduct or malpractice." Therefore, appellant's judgment and sentence is REVERSED and REMANDED FOR A NEW TRIAL.

IT IS SO ORDERED.

/s/ James F. Lane
JAMES F. LANE, Presiding Judge
/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Vice Presiding Judge, Specially Concur.
/s/ Tom Brett
TOM BRETT, Judge
/s/ Ed Parks
ED PARKS, Judge
/s/ Charles A. Johnson
CHARLES A. JOHNSON, Judge

### APPENDIX

As per your ORDER of July 3, 1990, attached are my Findings of Fact and Conclusions of Law derived from the evidentiary hearing held in this matter on August 28 and 30, October 3, 4 and 5, December 10, 1990.

Dated this 21st day of March, 1991.

s/J.R. PEARMAN
J.R. Pearman
District Judge

### FINDINGS OF FACT

1. Dates and events pertinent to this case are:

January 16, 1986—State of Oklahoma filed Information against defendant alleging Murder, 1st degree;

January 30, 1986—Defendant appeared with attorney Pat Thompson; preliminary hearing set for April 15, 1986;

April 15, 1986—Preliminary Hearing continued on defense motion due to defense counsel's hospitalization;

June 19, 1986—Defendant appears for preliminary hearing with Pat Thompson and Larry Gullekson. Part of testimony presented. Preliminary Hearing was continued until July 2, 1986;

July 2, 1986—Defendant appears for preliminary hearing with Pat Thompson and Larry Gullekson—Dr. Keith Montgomery testified regarding bite mark evidence. Dr. Richard Glass was talked to by defense counsel on telephone. Defendant was bound over for district court arraignment to be held on September 3, 1986;

September 3, 1986—District Court Arraignment was passed by agreement of parties to September 17, 1986;

September 17, 1986—District Court arraignment was passed by agreement of parties to October 30, 1986;

October 28, 1986—On defendant's Motion, district court arraignment passed until December 11, 1986;

December 11, 1986—On defendant's Motion, district court arraignment passed until January 13, 1987;

January 29, 1987—Defendant appears for District Court Arraignment with Pat Thompson. Defendant enters plea of not guilty. Jury trial set for May 5, 1987;

March 18, 1987—District Attorney and Defense counsel met with State bite mark experts;

April 9, 1987—Defense counsel, Pat Thompson and Larry Gullekson allowed to withdraw; George Briggs enters appearance;

May 5, 1987—Jury trial begun.

2. The crime committed against the victim Kathryn Wilhoit, was Murder in the first degree beyond all reasonable doubt.

3. The evidence tending to prove that the defendant, Gregory Wilhoit, perpetrated said crime was circumstantial.

4. The most important item of circumstantial evidence tending to prove that the defendant was the perpetrator of said crime was the testimony of Dr. Richard Glass and Dr. Keith Montgomery, rendering their respective opinions concerning the bite mark evidence obtained by investigators and the identity of the person making said mark.

5. Defendant's parents were advised by attorneys Thompson and Gullekson that an expert witness regarding bite mark evidence in favor of the defense was needed, but George Briggs elected not to use such an expert even though he was contacted by one, at the insistence of the Defendant's parents.

6. George Briggs now states that he had no strategical reason for not using a bite mark expert in his defense case.

7. The bite mark evidence was available for inspection by defense experts prior to trial.

8. In spite of the obvious importance of the bite mark evidence, the defense never had the evidence analyzed prior to trial by a defense bite mark expert. Since no defense expert had seen the bite mark evidence, the defense of course did not present any bite mark evidence from a defense expert at trial.

9. The importance of the bite mark evidence was obvious well in advance of trial.

10. Eleven well-recognized forensic odontologists have examined the bite mark evidence and state that the bite mark on Mrs. Wilhoit does not match Mr. Wilhoit's teeth, as shown by affidavits obtained by the defense after trial.

11. Defendant's parents accepted financial responsibility for paying for defendant's attorney fees and costs of defense.

12. Severe personality conflicts developed between defendant and defense counsel, Thompson and Gullekson, such that defendant "fired" his counsel, who then filed their application to withdraw as counsel on April 9, 1987, less than one month prior to the ordered jury trial date.

13. At defendant's request, defense counsel Thompson and Gullekson, were permitted to withdraw as counsel and new defense counsel George Briggs was permitted to enter his appearance.

14. No Motion for Continuance of the jury trial setting was filed by any of defendant's counsel.

15. Defendant had over ten (10) months prior to trial to investigate and develop defense expert testimony.

16. The newly discovered evidence was available to defendant well before trial, possibly as long as ten (10) months.

17. The "newly discovered evidence" alleged by the defendant was of the character which would be used to impeach the testimony of the State's expert witnesses.

18. Defense counsel, George Briggs, had only three weeks from the time he was retained to prepare for trial.

19. Former defense counsel, Gullekson and Thompson were allowed to withdraw as counsel only after affirmations by said counsel that they would assist new counsel, Briggs, to prepare for trial.

20. Defendant, Gregory Wilhoit, was well aware that the jury trial for the charge against him was set for May 5, 1987 and knew that new counsel, whoever that was, would have only three weeks to prepare for trial, yet he insisted that the trial court allow former counsel Gullekson and Thompson to withdraw, and that he be allowed to retain George Briggs.

21. Defense counsel, George Briggs, did call defense witnesses regarding the character and lawfulness of his client, as well as the adversities the defendant and victim's marriage had survived.

22. Defense counsel, George Briggs, conducted extensive cross-examination of the State's expert witnesses which showed that he had a good understanding of bite mark identification.

23. Defense counsel may use different trial strategies regarding expert witness testimony—including countering a State's expert witness by use of a defense expert witness or to attack the methodology of the expert, his field of expertise or the expert himself through cross-examination.

24. Defense counsel, George Briggs, received significant brain injury on or about February 2, 1986. Following hospitalization and treatment, prognosis was that he would not be able to carry out his work *until* he recovered which might be several months.

25. Defense counsel, George Briggs, at the time he assumed the defense of the defendant suffered from alcohol dependence and abuse, which began years before and increased to serious and grave proportions two to three years prior to the trial of the defendant.

26. During periods of intoxication, defense counsel, George Briggs, was incapable of effectively representing individuals in court proceedings.

27. Oklahoma Bar Association records establish that Mr. Briggs had stipulated, and that the bar association subsequently made a finding, that Mr. Briggs's ability to function as a lawyer was noticeably impaired by alcohol during the month of April, 1987.

28. Mr. Briggs's treatment for alcoholism and his longstanding regular consumption of large quantities of alcohol were established by various records introduced at the evidentiary hearing.

29. Evidentiary hearing affidavits and testimony established alcoholism, mental illnesses and brain damage on the part of defense counsel George Briggs.

30. There exists some evidence which indicated that some person other than Gregory Wilhoit may have committed the Murder of Kathryn Wilhoit.

## CONCLUSIONS OF LAW

1. A new trial should not be granted upon the basis of newly discovered evidence unless there is established by the defendant:

  a. That the evidence was not available at the time of trial; or, if the evidence was available at the time of trial, the defendant could not, by the exercise of due diligence, have procured the same before trial.

  AND

  b. If the "newly discovered evidence" had been introduced at trial there is a reasonable probability that a different result would have been reached (*High v. State*, 401 P.2d 180 [189]; *Poe v. State*, 522 P.2d 638; *Stevenson v. State*, 497 P.2d 1114; *Pruitt vs. State*, 270 P.2d 351)

2. Failure to exercise due diligence to discover evidence which was available before trial constitutes a bar to a new trial on such ground (*Henderson v. State*, 94 Okl. Cr. [45], 230 P.2d 495, 23 A.L.R.2d 1292, cert. denied 72 S.Ct. 234, 342 U.S. 898, 96 L.Ed. 673; *Vickers v. State*, 538 P.2d 1134; *Bowen v. State*, 715 P.2d 1093)

3. The granting of a new trial based upon the ground of newly discovered evidence is within the sound discretion of the trial court and will not be disturbed upon appeal except upon a showing that the trial court abused its discretion (*Poe v. State*, 522 P.2d 638) (709 P.2d 202)

4. The defendant failed to fully investigate and procure expert testimony regarding bite mark identification even though he had over ten (10) months in which to do so, and said failure constitutes a failure to exercise due diligence to discover evidence which was available prior to trial.

5. The newly discovered evidence was of the character to impeach the State's expert witnesses, which if presented at the trial, would raise a sufficient probability that the result would have been different.

6. In order to grant relief to a defendant based upon ineffective assistance of counsel, the Court must find that: (1) Counsel's assistance was such that he was not providing reasonably effective assistance based upon an objective standard of reasonableness under prevailing professional norms, and (2) that the deficient performance prejudiced the defense such that defendant was deprived of a fair trial, that is the result of the trial was unreliable and that if the errors had not occurred there exists a good probability that the result would have been different. (*Strickland v. Washington*, 446 [466] U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052).

7. The Court must indulge a strong presumption that criminal defense counsel's conduct falls within the *wide* range of reasonable professional assistance. (*Strickland*, supra)

8. Strategic choices made by criminal defense counsel after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, while strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations; in other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary, and a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments. (*Strickland,* supra)

9. A fair assessment of performance of a criminal defense attorney, under the Sixth Amendment requirement of effective assistance of counsel, requires that *every effort be made to eliminate the distorting effects of hindsight,* to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. (*Strickland,* supra)

10. The failure of George Briggs to fully investigate the possibility of other suspects and to call *all* defense witnesses available, if unreasonable and error, would not have caused a difference in the outcome of the trial and, therefore, caused no prejudice to the defendant.

11. Defendant has a duty to fully inform his counsel of his defense, and provide counsel with the information and resources available to adequately prepare a defense. Having the financial resources to retain a defense bite mark expert, defendant had a duty to do so when requested by defense counsel. George Briggs refused, for apparently no reason according to his affidavit of November 30, 1990, to use a bite mark expert even though he knew that evidence was the most important in the case and that the defendant's family hired Dr. Krauss. This goes directly to the issue of ineffective counsel.

12. Mr. Brigg's predecessors concurred that defense bite mark evidence was impor-tant to the Wilhoit case. Thus, those attorneys also did not make any strategic decision to avoid defense bite mark evidence. See Defendant's Exhibit 31–C (affidavit of Larry Gullekson) and Defendant's Exhibit 31–D (affidavit of Pat Thompson). Both Mr. Gullekson and Mr. Thompson expressed the firm opinion that a defense bite mark expert was important to the representation of Mr. Wilhoit.

13. Because no one ever got the bite mark evidence to a defense expert, George Briggs did not know what a defense expert would have said. A decision to "wing it" on the most crucial issue in the case cannot be made legitimately without knowing what the defense side of the story is. In Mr. Wilhoit's case it seems to have been universally recognized both before trial and since that time that the bite mark issue was the most important issue in the case.

14. Evidence from a defense forensic odontologist would have been extremely important to the defense of Mr. Wilhoit's homicide case.

15. Mr. Wilhoit's counsel should have had the bite mark evidence examined by a defense expert, especially since a forensic odontologist had been hired by the Wilhoit family and was available to examine the evidence.

16. Since the defense did not have the bite mark evidence examined by an expert, defense counsel did not exercise reasonable professional judgment. The representation afforded to Mr. Wilhoit was not in accord with necessary standards for reasonableness and diligence.

17. There is a reasonable probability that the result of Mr. Wilhoit's trial would have been different if a defense forensic odontologist had first examined the bite mark evidence and then testified at trial.

18. Defense counsel did not exercise reasonable professional judgment in failing to obtain defense expert evidence and to otherwise take action to refute the prosecution experts' contentions, especially the contentions regarding the degree of certainty involved in bite mark comparisons and the contentions regarding the significance of microbiological evidence.

19. The lack of professional judgment is underscored by the fact that Mr. Wilhoit's family had seen to it that such evidence could be available. Guy Wilhoit, after consulting with Dr. David John, had provided defense counsel with information regarding the commonness of the bacteria which the prosecution was asserting were rare. The Wilhoit family had hired Dr. Krauss, who obviously could have refuted the idea that an alleged consistency in bite mark comparison necessarily brings about a certain identification of the biter. Dr. Krauss and others were readily available to testify that the microbiological comparison technique is not an accepted technique in the forensic odontology community.

20. There also is a reasonable likelihood that the result of the trial would have been different if jurors had heard evidence that standard bite mark comparison techniques cannot effect certain identifications and in fact can result in determinations that multiple sets of teeth match a single bite mark.

21. It was not a strategic defense tactic to omit evidence which would have caused serious doubt on the reliability of the prosecution's key expert evidence and which would have caused any serious minded juror to question the credibility of the prosecution's bite mark experts.

22. Mr. Briggs himself has sworn that he had no strategical reason for not preparing a bite mark defense in general. Part of proper preparation of such a defense would have been to determine the reliability of the prosecution experts' contentions and to be ready with evidence attacking the reliability.

23. Even if Mr. Briggs had not stated that he had no strategical reason for omitting preparation of a defense bite mark case, it is obvious that any conscious decision to ignore this type of evidence would not have been a reasonable decision. It was obvious well prior to trial that the bite mark issue and the related microbiological issue were the most important issues in the case. Especially considering the unquestioned availability of information and witnesses who could have exposed apparently misleading and unreliable evidence, it was unreasonable to ignore the impeachment type evidence regarding those key issues.

24. George Briggs was ineffective in regard to challenging the reliability and accuracy of the prosecution's expert evidence.

25. Because Mr. Wilhoit was represented by a person who, though licensed to practice law, was not capable of practicing law, Mr. Wilhoit in reality was not represented by counsel.

26. A fundamental task of a criminal defense lawyer, or any other lawyer who is preparing to try a case is to investigate the basics of the case to determine what witnesses to call, what to ask those witnesses, and what to ask the prosecution witnesses.

27. George Briggs should have conducted a reasonable investigation of the case. However, his own affidavit demonstrates that he only briefly interviewed one witness for the prosecution and otherwise did not interview any witnesses, even the witnesses who were called in the defense case. In neglecting to investigate the case, defense counsel was not exercising reasonable professional judgment.

28. Mr. Wilhoit was prejudiced by this failure to investigate the case in a number of respects. As noted above, the failure to investigate resulted in the omission of a necessary challenge to the accuracy and reliability of the prosecution's expert evidence. Other prejudice included not getting an adequate mitigation case put together for the second stage of the trial, and failing to demonstrate in a convincing manner the strength of the circumstantial evidence that indicated someone other than Mr. Wilhoit committed the homicide.

29. There is a reasonable likelihood that the result of the trial would have been different if defense counsel had devoted significant attention to investigating the case and determining what facts might be helpful to the defense.

30. As indicated by Mr. Briggs's affidavit, this court finds independent of that affidavit, there could be no legitimate strategical reason for failing to learn the basic

facts regarding the defense of a death penalty case.

31. Mr. Wilhoit was denied the effective assistance of counsel because of defense counsel's failure to interview important witnesses and his general failure to investigate or prepare for trial.

32. Because of evidence, confirmed by an Oklahoma Bar Association finding, that Mr. Briggs's abilities as an attorney were thwarted during the time Mr. Briggs was representing Mr. Wilhoit, Mr. Wilhoit in effect was not represented by counsel in his homicide case.

33. Defendant's Exhibit OBA–13, page 3, the stipulation signed by Mr. Briggs and approved and made a part of the findings of the Bar's Professional Responsibility Tribunal, states:

> At the time of the filing of the Complaint, George Briggs was suffering from the habitual use of alcohol beverages or liquids of alcoholic content in conjunction with prescription drugs to the extent which impaired or tended to impair his ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law.

34. Defendant's Exhibit OBA–2 demonstrates that the complaint was filed on April 7, 1987—the month during which Mr. Briggs was retained to represent Mr. Wilhoit and the month just preceding Mr. Wilhoit's capital trial. The bar association records—see Defendant's Exhibits OBA–15, OBA–16, and OBA–18—establish that this use of intoxicants continued thereafter and caused Mr. Briggs to be unfit to practice law. The conclusion of the bar association is supported by substantial documentation of the effects of Mr. Briggs's alcoholism and of the professional opinions of Dr. Coates and Dr. Vinekar.

35. Thus, although Mr. Briggs was on the roll of attorneys at the time he represented Mr. Wilhoit, he did not meet the basic requirements to be a member in good standing of the Oklahoma Bar Association.

36. The law is well established that when a person is represented by counsel only in theory, but not also in substance, the situation is the equivalent of not being represented by counsel at all.

37. It is imperative that the legal profession allow not even the appearance of misconduct or malpractice. It is the opinion of this Court, that it would be a fundamental miscarriage of justice to deny Gregory Ralph Wilhoit a new trial with competent counsel.

LUMPKIN, Vice Presiding Judge, specially concurring:

I concur in the Court's decision in this case and write to compliment the District Judge for a very thorough and scholarly order setting forth the findings of fact and conclusions of law in this case. Judge Pearman meticulously set forth in a nine page order an analysis of the evidence presented during the six days of hearing and succinctly applied those facts to the applicable law in a very competent manner. His diligence has greatly expedited this Court's review of the record and resolution of the issues raised.

I am authorized to state that Judge JOHNSON joins in this specially concurring opinion.