**Michael Donald ROBERTS, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

**No. PC–95–509.**

Court of Criminal Appeals of Oklahoma.

Jan. 26, 1996.

Robert W. Jackson, Appellate Defense Counsel, Oklahoma Indigent Defense System, Norman, Appellate Counsel, for Petitioner.

W.A. Drew Edmondson, Attorney General, Sandra D. Howard, Assistant Attorney General, Chief, Criminal Appeals, Oklahoma City, Appellate Counsel, for Respondent.

*OPINION AFFIRMING DENIAL OF*
*POST–CONVICTION RELIEF*

LUMPKIN, Judge:

Petitioner Michael Donald Roberts appeals to this Court from the denial of post-conviction relief by the District Court of Oklahoma County Case No. CRF–88–677. At the conclusion of a jury trial, Petitioner was convicted of Murder in the First Degree (21 O.S.Supp.1982, Sec. 701.7) and Burglary in the First Degree, After Former Conviction of Two or More Felonies (21 O.S.1981, Sec. 1431 and 21 O.S.Supp.1985, Sec. 51). After finding the presence of three aggravating circumstances—that Petitioner committed the murder to avoid arrest and prosecution; he was previously convicted of a felony involving the use or threat of violence to the person; and there was a probability Petitioner would commit criminal acts of violence that would constitute a continuing threat to society—the jury recommended punishment of death for murder and three hundred-fifty (350) years for the burglary after former convictions. This Court affirmed the convictions on direct appeal, and certiorari was denied by the Supreme Court of the United States. *Roberts v. State,* 868 P.2d 712 (Okl. Cr.), *cert. denied,* —— U.S. ——, 115 S.Ct. 158, 130 L.Ed.2d 96 (1994).

I.

Petitioner raised the following propositions of error in his application to the trial court: (1) Ineffective assistance of counsel at both trial and direct appeal stages; (2) Failure to disclose exculpatory evidence; (3) Failure to disclose evidence of circumstances surrounding his arrest, which precluded his being able to have an effective suppression hearing; (4) He was denied investigative assistance; (5) Prosecutorial misconduct; (6)[1] His video confession contained irrelevant evidence and was highly inflammatory, resulting in an unreliable sentence in violation of the Eighth Amendment; (7) Other violations existed but were not raised because appellate counsel was ineffective (those consisted of (a) the continuing threat aggravating circumstance was unconstitutional; (b) the capital sentencing scheme was unconstitutional because it does not narrow the class of persons eligible for the death penalty; (c) developments in criminal jurisprudence shows the death penalty is cruel and unusual punishment; (d) admission of unadjudicated crimes in the second stage violated the Eighth Amendment; (e) incorrect jury instructions; (f) the prosecutor made improper comments on the role of the jury in assessing the death penalty; (g) the death penalty is unconstitutional because there are no standards limiting prosecutorial discretion in determining when the death penalty should be sought; (h) lethal injection is cruel and unusual punishment); (8) Cumulative effect of errors. In the application, he also requested an evidentiary hearing to prove the claims.

The trial court denied relief in an order dated May 11, 1995 and filed May 12, 1995.[2] No evidentiary hearing was held. Petitioner appeals that denial to this Court, setting forth the following propositions: (1) Ineffective assistance of counsel at both trial and direct appeal stages; (2) Failure to disclose exculpatory evidence; (3) Failure to disclose evidence of circumstances surrounding his arrest, which precluded his being able to have an effective suppression hearing; (4) He was denied investigative assistance; (5) Prosecutorial misconduct; (7)[3] Other violations existed but were not raised because appellate counsel was ineffective (those consisted of (a) the continuing threat aggravating circumstance was unconstitutional; and (b) admission of unadjudicated crimes in the

---

1. This proposition was not raised on his appeal from the district court's denial of post-conviction relief.

2. We also note the following pertinent dates: On 6–12–95, the petition in error was filed. On 6–22–95, Petitioner filed a motion for extension of time in which to file his brief (on 6–29, he was granted 30 days). On 7–21–95, Petitioner filed another motion for an extension (on 7–31 he was given 30 days from 8–5–95, a final extension).

On 9–5–95, Petitioner's brief was filed by Robert W. Jackson. On 9–25–95, Respondent filed a motion for extension of time (given 10 days from 9–25 to file). On 10–12–95, Respondent's brief was filed. On 10–25–95 Petitioner's reply brief was filed.

3. There is no sixth proposition of error in his brief to this Court.

second stage violated the Eighth Amendment); (8) Errors in jury instructions (a part of the seventh proposition of error in his application to the trial court); and (9) Cumulative effect of errors.

In his brief to this Court, Petitioner also requested an evidentiary hearing be held. However, that request was not supported by affidavit, and nothing in the record reveals any basis which supports the need for an evidentiary hearing. *See* 22 O.S.Supp.1994,[4] Ch. 18, App. *Rules of the Court of Criminal Appeals*, Rule 3.11; *see also Wilhoit v. State*, 816 P.2d 545, 546 (Okl.Cr.1991). In his reply brief, he expanded that to an additional proposition of error, claiming error on the part of the trial court in not holding a hearing. As a new proposition, that is waived, as it was not timely filed. *See* 22 O.S.Supp.1994, Ch. 18, App. *Rules of the Court of Criminal Appeals*, Rules 9.3(E) & 3.4(F).

## II.

The post-conviction procedure is not intended to be a second direct appeal. *Fox v. State*, 880 P.2d 383, 384 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1318, 131 L.Ed.2d 199 (1995), this Court does not consider an issue which was raised on direct appeal (and is therefore *res judicata* ), or an issue which could have been raised on direct appeal but which was not (and is therefore waived). *Thomas v. State*, 888 P.2d 522, 525 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 123, 133 L.Ed.2d 73 (1995); *Castro v. State*, 814 P.2d 158, 159 (Okl.Cr.1991), *cert. denied*, 502 U.S. 1063, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992).

## III.

In his first proposition of error, Petitioner claims he received ineffective assistance of counsel at both the trial and direct appeal level. Petitioner was represented at both levels by Irven Box and Diane Clowdus.

Before addressing Petitioner's claims, one matter deserves special attention. Petitioner has included in his post-conviction record a transcription of oral argument conducted on his direct appeal before this Court. The transcription was made by Oklahoma Indigent Defense System personnel after listening to tapes of the oral argument. Petitioner included this transcription as Exhibit 1 in his appendix to his application for post-conviction relief (O.R.109*f*). He made reference to this transcription both in his brief to the trial court and in his brief to this Court. We do not consider this exhibit in reaching our decision. The purpose of the tape recording made of an oral argument is to allow judges to review and, if not present, otherwise participate in the decision of the case. 22 O.S.Supp.1995, Ch. 18, App. *Rules of the Court of Criminal Appeals*, Rule 9.3(F).[5] While there are provisions for examining electronically produced media in preparation for an appeal, the appellate review is limited to evidence adduced at trial. *See* 22 O.S.Supp.1995, Ch. 18, App. *Rules of the Court of Criminal Appeals*, Rule 1.3(B)(1). As if this were not clear enough, this Court in its January 15, 1995, Order denying Petitioner's motion for a transcript of oral argument observed "[t]he tape recordings of oral argument are the internal work product of the Judges of this Court and are maintained for internal use only. Further, the tape recordings are not part of the record on appeal." Accordingly, the transcription was not properly before the district court, and we shall not consider it here.

Our analysis of a claim of ineffective counsel both at trial and on direct appeal begins with the presumption trial counsel was competent to provide the representation Petitioner needed; therefore, the burden is on Petitioner to demonstrate both a deficient performance and resulting prejudice. *Fisher v. State*, 736 P.2d 1003, 1011–12 (Okl.Cr. 1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988) (citing *Strick-*

---

**4.** The laws governing capital post-convictions have been radically changed. *See* 22 O.S.Supp. 1995, § 1089; 22 O.S.Supp.1995, Ch. 18, App. *Rules of the Court of Criminal Appeals*, Rule 9.7. Petitioner's appeal brief to this Court was not filed under the new rules, however.

**5.** Some modifications were made to this Rule in revisions this year; however, those revisions did not affect the intent of the Rule.

*land v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984)). Petitioner must demonstrate counsel's representation was unreasonable under prevailing professional norms, and the challenged action could not be considered sound trial strategy. *Id.* (citing *Strickland*, 466 U.S. at 688–89, 104 S.Ct. at 2064–65; *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). To establish prejudice, Petitioner must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is one that undermines confidence in the outcome. *Id.* Although we consider the totality of the evidence which was before the fact-finder, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* (quoting *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069). We now turn to Petitioner's specific allegations, beginning with the allegation counsel was ineffective at the appellate level.

### A.

▮ Petitioner claims counsel was ineffective on appeal because he failed to adequately preserve his claim the prosecution improperly withheld exculpatory material at trial in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As a part of the evidence used in support of the allegation Petitioner was a continuing threat to society, the prosecution listed twenty (20) specific acts involving rape and burglary, based on a videotaped confession Petitioner gave police. At trial, the State called eleven (11) of those victims to testify to corroborate the taped confession. Petitioner's attorney learned after trial the prosecutors knew before trial some of the remaining victims would not testify. His attorney claimed on direct appeal he was unaware of that fact during the trial. The attorney also claimed on direct appeal some of the victims, including some who testified, had given information to authorities indicating their attacker was white. Appellant is an African–American. On direct appeal, we found the complaint was not adequately preserved. *Roberts*, 868 P.2d at 719; nonetheless, we examined the complaint for plain error based on the attorney's

allegations and the record before us. We found none, observing:

> [w]hether Appellant committed 20, 14, or 11 additional robberies or burglaries, there was ample evidence to convince a jury in the light most favorable to the prosecution the probability existed Appellant would commit criminal acts of violence that would constitute a continuing threat to society. Any error occurring here was harmless beyond a reasonable doubt; and presentation of the evidence he now alleges exists but was withheld would not have undermined confidence in the jury's sentence.

*Id.* at 720. We have carefully examined the record and exhibits presented to the trial court in support of Petitioner's application for post-conviction relief. We find nothing which was not discussed in his direct appeal. Therefore, we find nothing that indicates counsel was ineffective for failing to better raise his claim of exculpatory evidence being withheld and nothing that requires an evidentiary hearing on that issue. Considered collectively, we find nothing that "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. ——, ——, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490, 506 (1995).

Accordingly, Petitioner's claim on this point must fail. He has failed to present evidence that his counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064. Petitioner has failed to establish that his direct appeal counsel failed to raise issues warranting reversal, modification of sentence or remand for resentencing. *Hooks v. State*, 902 P.2d 1120, 1123 (Okl.Cr.1995).

Petitioner also claims ineffective assistance of appellate counsel for failing to allege ineffective trial counsel. We now turn to the question whether trial counsel was ineffective.

### B.

▮ Petitioner also claims counsel was ineffective on direct appeal because he failed to

allege incompetent counsel at the trial level. As noted above, the same attorney represented Petitioner both at trial and on direct appeal. Accordingly, his claim of ineffective trial counsel is not waived, and will be considered. *See Webb v. State*, 835 P.2d 115, 117 (Okl.Cr.1992); *see also Fowler v. State*, 896 P.2d 566, 569 (Okl.Cr.1995).

■ We have examined each of Petitioner's complaints. Petitioner claims counsel was ineffective at trial because he did not devote sufficient time to his case, given the circumstances of the case and that fact it was a capital case. He also claims counsel was ineffective because he failed to adequately investigate discovery materials. In support of his claim, Petitioner presented to the district court affidavits of counsel filed in the trial court in which his attorney itemized his time to receive payment. This Court has held this type of evidence in and of itself is insufficient to demonstrate ineffectiveness. *Fisher*, 736 P.2d at 1012. As in *Fisher*, Petitioner here has presented nothing more than mere speculation counsel's investigation and preparation consisted of nothing more than the time stated in the affidavit for attorney's fees. As a result, Petitioner cannot show prejudice. The trial record showed a seasoned, experienced counsel performing an admirable job at trial. We find no merit to this portion of the complaint.

Petitioner also claims counsel was ineffective because he made the following mistakes during trial: he attempted to distance himself from his client; he failed to ask the jury to sentence Petitioner to life without parole; he failed to challenge the unavailability of witness Mouser; he failed to obtain or test forensic evidence; he made repeated references to the victim as poor Mrs. Brooks; he made comparisons between his own life of poverty as a child and Petitioner's life of poverty; he presented a confusing argument in the first stage; he failed to cross-examine witnesses in the second stage when he knew they could not identify Petitioner; he failed to attempt to rehabilitate a juror during voir dire concerning the juror's views on the death penalty; he failed to file a motion for a new trial or an evidentiary hearing after learning key witnesses misidentified their at-

tacker; he failed to mentally evaluate Petitioner before trial; he failed to file a flurry of pre-trial motions; he failed to make objections to evidence at trial; he waived some of his peremptory challenges; he failed to properly investigate the case; in the second stage, he failed to develop and present mitigating evidence about Petitioner's early childhood development.

■ Based on the record before us, we are not convinced trial counsel attempted to distance himself from Petitioner. To tell the jurors counsel was court-appointed or to describe Petitioner as a criminal, illegitimate or below normal intelligence could as easily be interpreted as an attempt to show the jurors counsel was being frank and not misleading them. Additionally, when taken in context, the statements are entirely proper.

■ The same is true of counsel's telling the jury in the first stage of the trial that the decision as to punishment is an issue to be dealt with in the second stage of trial. In the same manner, to refer to the victim as an unfortunate victim could be considered sound trial strategy: counsel would not be serving his client well by attacking or attempting to discredit an 80-year-old dead woman.

■ It could also be considered sound trial strategy not to cross-examine numerous second-stage witnesses when he was aware they would be unable to identify Petitioner. In fact, counsel used this lack of cross-examination to his advantage during closing argument, when he observed he did not cross-examine them because he felt sorry for them, but also adding the witnesses could not identify Petitioner as their attacker. He also commented he did not ask questions because he did not know what the answers would be; but added the prosecution knew the answers, but did not ask the questions, clearly implying the prosecution had something sinister to hide.

■ Likewise, we see no error in not arguing to the jurors Petitioner should receive life without parole. This could be considered trial strategy: by arguing for life with the possibility of parole, a reasonable attorney could hope the jurors would arrive

at life without parole as a compromise between simple life and the death penalty. In addition, there is nothing inappropriate in attempting to draw comparisons between the attorney and his client by referring to both as having experienced poverty and hardships earlier in life: by drawing the comparison, counsel could hope the jury could conclude that Petitioner's life could still be productive, as was counsel's.

■ Given the course of the proceedings, it could also be considered sound trial strategy not to attempt to rehabilitate a potential juror during voir dire after the juror was asked if she could impose the death penalty without doing violence to her conscience. Counsel was there; we were not. There is always the possibility counsel felt the juror would otherwise not have been favorable to his client, and further questioning would only result in antagonizing others.

■ This Court has held we will not second-guess matters concerning trial strategy if there is a reasonable basis for counsel's actions. *Robinson v. State,* 900 P.2d 389, 405 (Okl.Cr.1995); *Sellers v. State,* 889 P.2d 895, 898 (Okl.Cr.1995); *Mayes v. State,* 887 P.2d 1288, 1314 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995). There is no reason to depart from that holding here.

■ On other matters, Petitioner simply cannot show prejudice. Therefore, we find no merit to Petitioner's charges counsel was ineffective for failing to challenge the unavailability of a witness used in the second stage to show continuing threat. Counsel did in fact succeed in keeping out evidence related to that particular crime in all respects except that of the police officer, who merely testified he took an offense report from the victim. The witness would have testified as to one of twenty (20) incidents used to show Petitioner was a continuing threat to society.

■ Petitioner also claims counsel was ineffective because he did not examine forensic evidence obtained from the victim's body. Even assuming that evidence was not examined, Petitioner has failed to show this Court how examination of this evidence would have made a difference in light of Petitioner's confession he was there and killed the victim.

In addition, Petitioner cannot show prejudice by his counsel's failure to file a motion for a new trial after learning second stage witnesses learned their attacker could have been white instead of black, for reasons stated above.

■ Petitioner also claims counsel was ineffective because he failed to obtain a mental health expert to examine Petitioner before trial. It was not until after trial started that counsel obtained such an expert to perform a psychiatric evaluation of Petitioner. That expert then testified at trial.

Petitioner definitely cannot show prejudice as a result of counsel's failure to obtain this mental health expert earlier in the proceedings. As the district court noted in its denial of post-conviction relief, had the determination been made before trial, this information would have been discoverable by the prosecution, who would have had an opportunity to have Petitioner examined by its own expert. As it was, the psychiatric evidence presented was uncontroverted. While we cannot condone what could be conceived as an attempt by counsel to "sandbag" the opposing party, we can safely state Petitioner has failed to show any prejudice as a result of his counsel's actions.

Petitioner also has not shown prejudice by counsel's failure to file pretrial motions, including one for a change of venue. He has not demonstrated that, but for counsel's perceived errors, the motions would have been successful. The same is true of counsel's failure to make certain evidentiary objections at trial.

■ Counsel is not ineffective for waiving peremptory challenges, when a petitioner cannot show that the jury which was ultimately seated was composed of members who were not qualified to sit. *See Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988). That rule of law is true here.

■ Petitioner also contends trial counsel was ineffective because he failed to call Connie Roberts to testify she saw a man enter

the victim's home the morning her murder was discovered, but did not identify that man as Petitioner. Again, he has failed to show prejudice. The prosecution called Ms. Roberts as a witness, and defense counsel brought out during cross-examination she had viewed several line-ups and did not identify Petitioner as that man in any of them.

We likewise hold Petitioner cannot show prejudice by counsel's perceived failure to more thoroughly investigate his case. Counsel presented a viable defense, and there is nothing to indicate any additional evidence counsel could have obtained would have changed the outcome of the trial or the determination of punishment. Concerning mitigating evidence, counsel cannot be ineffective for failing to more fully develop Petitioner's life history, as Petitioner has not shown he presented such information to his attorney. Courts have historically held a defendant bears some burden of supplying counsel with necessary information within his knowledge. *See United States v. King*, 936 F.2d 477, 480 (10th Cir.), *cert. denied*, 502 U.S. 1008, 112 S.Ct. 647, 116 L.Ed.2d 664 (1991) (adequacy or reasonableness of attorney's action depends on defendant's own action or inaction); *United States v. Rhodes*, 913 F.2d 839, 844 (10th Cir.1990), *cert. denied*, 498 U.S. 1122, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991) (same); *United States v. Miller*, 907 F.2d 994, 998 (10th Cir.1990) (same); *Brown v. State*, 871 P.2d 56, 76 (Okl.Cr.), *cert. denied*, —— U.S. ——, 115 S.Ct. 517–18, 130 L.Ed.2d 423 (1994) (quoting *Dooley v. Petsock*, 816 F.2d 885, 890–91 (3d Cir.1987) ("Trial counsel cannot be ineffective for failing to raise claims as to which his client has neglected to supply the essential underlying facts when those facts are within the client's possession; clairvoyance is not required of effective trial counsel.")). Accordingly, we find no merit to Petitioner's first proposition of error.[6]

### IV.

For his second proposition of error, Petitioner claims the prosecution withheld

exculpatory evidence. Specifically, Petitioner claims the prosecution withheld evidence that one of the second-stage witnesses, who testified in support of the continuing threat aggravating circumstance, had told police her attacker was white. This claim is *res judicata* as it was addressed on direct appeal. *Roberts*, 868 P.2d at 719.

Likewise *res judicata* is Petitioner's claim his arrest was illegal, *Roberts*, 868 P.2d at 717; his claim the prosecution withheld evidence concerning the unwillingness of another witness to testify, and the admission of her statement to police, *Roberts*, 868 P.2d at 720; and his claim the prosecution knew a second witness would refuse to testify, *Roberts*, 868 P.2d at 718–19.

Petitioner in the same proposition also alleges the prosecution withheld evidence of other suspects. Petitioner has not demonstrated this information was not provided to trial counsel. Accordingly, this claim is waived, as it could have been considered on direct appeal, but was not. Likewise waived on appeal is Petitioner's contention the prosecution withheld exculpatory evidence in the form of the victim's fingernail clippings. The record does not show counsel was unaware the clippings did not link Petitioner to the crime, and Petitioner has not properly submitted to this Court any basis which would require an evidentiary hearing on this issue. Accordingly, this could have been raised on direct appeal but was not.

In the alternative, Petitioner claims that if we find his complaint as to these allegations is barred, trial counsel was ineffective for failing to explore other suspects. At the risk of sounding obvious, Petitioner has presented nothing to this Court showing that, even if other suspects did exist, any of them confessed to murdering the victim. It appears this characteristic is unique only to Petitioner. As one court from a sister state pointedly observed, "[l]ack of capacity to create miracles is not the test of ineffectiveness of criminal defense counsel." *Miller v. State*, 830

---

**6.** Petitioner also claims counsel was ineffective for failing to obtain and test forensic evidence such as fingernail clippings of the victim; and for failure to investigate other suspects which

may have existed in the murder of Mrs. Brooks. These are discussed below, in connection with Petitioner's allegations exculpatory evidence was withheld.

P.2d 419, 428 (Wyo.1992). We find nothing that "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, —— U.S. at ——, 115 S.Ct. at 1566, 131 L.Ed.2d at 506. Accordingly, counsel was not ineffective for failing to raise this issue.

At trial, defense counsel attempted to discredit the validity of Petitioner's confession by showing Detective Shahan interviewed him on numerous occasions concerning the murder; however, the detective testified at trial he spoke with Petitioner once before February 3, 1988. Petitioner now claims documents showing the detective did indeed talk with him on numerous other occasions were withheld, and were exculpatory. Again, Petitioner has failed to prove trial counsel did not have access to these reports, that the issue could not have been raised on direct appeal, and that there is any legal basis requiring an evidentiary hearing. Accordingly, this complaint is waived. Nor, as Petitioner claims, was trial counsel ineffective for failing to utilize this information. The record shows the detective did talk to Petitioner on other occasions; however, it appears these conversations concerned Petitioner's participation in the numerous burglaries in the area. Accordingly, Petitioner cannot show prejudice by counsel's failure to utilize this information.

### V.

For his third proposition of error, Petitioner complains the prosecution withheld evidence surrounding his arrest. This proposition was addressed on direct appeal, *Roberts*, 868 P.2d at 717, and is therefore *res judicata*. Within the same proposition, Petitioner complains evidence obtained pursuant to a search warrant should be suppressed, as police made misstatements in securing the warrant. This could have been raised on direct appeal, and is therefore waived.

### VI.

For his fourth proposition, Petitioner claims he was improperly denied investigative assistance. Petitioner could have raised this on direct appeal, but did not. Accordingly, the complaint is waived. In response to Petitioner's alternative allegation direct appeal counsel was ineffective for failing to raise it, we simply note Petitioner cannot show prejudice, in light of the evidence against him, including his confession that he killed the victim.

### VII.

Petitioner in his fifth proposition of error claims prosecutorial misconduct deprived him of a fair trial. He admits this was raised and discussed on direct appeal, *Roberts*, 868 P.2d at 718; however, he claims other errors uncovered since then stemming from this misconduct render it worthy of consideration on post-conviction appeal as well. This theory is premised on the theory the prosecutor withheld exculpatory evidence. Having addressed this and found it lacking, we find nothing to warrant revisiting the issue. Accordingly, it is *res judicata*, and therefore barred.

### VIII.

For his seventh proposition of error, Petitioner contends the jury was unguided in its determination whether Petitioner was a continuing threat to society; and this aggravating circumstance is unconstitutionally vague. In a related subproposition, he claims the admission of unadjudicated offenses in the second stage of his trial violated the Eighth Amendment.

These are waived, as they could have been raised on direct appeal. Anticipating this, Petitioner claims direct appeal counsel was ineffective for failing to raise them. In light of our repeated holdings disposing of this issue, *see, e.g., Cooper v. State*, 889 P.2d 293, 315 (Okl.Cr.1995), *cert. granted on other grounds*, —— U.S. ——, 116 S.Ct. 282, 133 L.Ed.2d 202 (1995); *Malone v. State*, 876 P.2d 707, 715–16 (Okl.Cr.1994) and cases cited therein; *Snow v. State*, 876 P.2d 291, 298 (Okl.Cr.1994), *cert. denied*, —— U.S. ——,

115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995), we find appellate counsel was not ineffective.[7]

## IX.

For his eighth proposition of error, Petitioner alleges the court erred in giving certain jury instructions. Specifically, he contends the court erred in giving second-stage instruction number three, which gave

the jury only the punishment options of death or life imprisonment; the option of life without parole was not mentioned. This portion of the proposition could have been presented on direct appeal but was not, and is therefore waived. Alternatively, Petitioner contends direct appeal counsel was ineffective for not raising the issue.

We have held a single error in instructions shall not warrant reversal if, when consid-

7. We are aware one federal district court has concluded use of unadjudicated crimes can result in a constitutional violation. *See Williamson v. Reynolds,* 904 F.Supp. 1529 (E.D.Okla.1995). We are also aware the issue is not yet settled in the federal courts, and that the Supreme Court has yet to specifically address the issue of using unadjudicated crimes to support the aggravating circumstance. *See Williams v. Lynaugh,* 484 U.S. 935, 935–36, 108 S.Ct. 311, 312, 98 L.Ed.2d 270 (1987) (Marshall, J., with whom Brennan, J., joins, dissenting to denial of petition for writ of certiorari). However, we note that the United States Supreme Court has generally approved the constitutionality of the aggravating circumstance. *See Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Tuilaepa v. California,* 512 U.S. ——, ——, 114 S.Ct. 2630, 2637, 129 L.Ed.2d 750 (1994) ("Both a backward-looking and a forward-looking inquiry are a permissible part of the sentencing process, however, and the States have considerable latitude in determining how to guide the sentencer's decision in this respect."); *Simmons v. South Carolina,* 512 U.S. ——, ——, 114 S.Ct. 2187, 2193, 129 L.Ed.2d 133 (1994) (quoting *California v. Ramos,* 463 U.S. 992, 1003, n. 17, 103 S.Ct. 3446, 3454, n. 17, 77 L.Ed.2d 1171 (1983), explaining it is proper for a sentencer to consider "the defendant's potential for reform and whether his probable future behavior counsels against the desirability of his release into society"). *See also Romano v. Oklahoma,* 512 U.S. ——, ——, 114 S.Ct. 2004, 2009, 129 L.Ed.2d 1 (1994) (Within prescribed constitutional limits, " 'the States enjoy their traditional latitude to prescribe the method by which those who commit murder shall be punished.' *Blystone v. Pennsylvania,* 494 U.S. 299, 309, 110 S.Ct. 1078, 1084, 108 L.Ed.2d 255 (1990). This latitude extends to evidentiary rules at sentencing proceedings."); *Johnson v. Texas,* 509 U.S. 350, 113 S.Ct. 2658, 2662–63, 125 L.Ed.2d 290 (1993) (reviewing numerous unadjudicated crimes presented to the jury); *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (noting Court had upheld the practice of placing before a capital sentencing jury the question of future dangerousness). While our own Tenth Circuit has not addressed the question, we note in passing the Fifth Circuit Court of Appeals has specifically addressed the use of unadjudicated crimes in support of the Texas continuing threat allegation, and found it constitutionally permissible. *See Williams v. Lynaugh,* 814 F.2d 205, 207–08

(5th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987); *Milton v. Procunier,* 744 F.2d 1091, 1097 (5th Cir.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). This Court interprets the continuing threat aggravator (allowing an extrapolation of past events to "look forward") as separate and distinct from the prior violent felony aggravator (which "looks backward"). Our Legislature has determined each is a separate and distinct basis for determining eligibility for the death penalty. Future threat can only be supported when past acts, coupled with the actions of the defendant in the current offense, together with any post-offense actions, provide a jury the factual basis needed to determine if a defendant will be a continuing threat to society. Denial of the evidence deprives the government of the ability to prove a constitutional aggravating circumstance.

Still, mindful of the lack of finality in this area of the law, we note the following: the jury also found Petitioner committed the murder to avoid arrest and prosecution (21 O.S.1981, Sec. 701.12(5)); and he was previously convicted of a felony involving the use or threat of violence to the person (21 O.S.1981, Sec. 701.12(1)). We found ample evidence to support both of those aggravating circumstances in Petitioner's direct appeal. In mitigation, Petitioner presented evidence tending to show he had no relationship with his natural father, his adoptive father died at an early age, and his stepfather abused him; he left home at age 11 and fended for himself; as a result of economic circumstances, he did not have a mother's guidance; he considered himself the "man of the family," and worked and contributed to the support of his family; he helped care for both his own children and his wife's children from a former marriage; he loved and was loved by his mother and siblings; he spent many of his childhood years in state institutions; he took punishment for things others did; and he at one time intervened to save the life of his suicidal sister-in-law, telling her "life is too precious to die." *Roberts,* 868 P.2d at 723. Having once again reviewed the evidence in support of the two aggravating circumstances listed above and weighed it against evidence in mitigation, we would conclude the two remaining aggravating circumstances easily outweighed mitigating evidence presented at trial. Accordingly, even were the continuing threat aggravator to fall, Petitioner's sentence of death is still valid.

ered in their totality, they fairly and accurately reflect the applicable law. *McCracken v. State*, 887 P.2d 323, 332–33 (Okl.Cr.1994); *Hooker v. State*, 887 P.2d 1351, 1361, 1366, 1369 (Okl.Cr.1994); *McGregor v. State*, 885 P.2d 1366, 1380 (Okl.Cr.1994). Here, while the complained-of instruction[8] did not mention the life-without-parole option, other instructions did. Specifically, the direct appeal record shows that the first instruction told the jury that under the law, the defendant must be punished by death, imprisonment for life or imprisonment for life without parole (O.R. 78); and the fifth instruction defined what an aggravating circumstance was, informing the jury that if they find the existence of an aggravating circumstance, they would be authorized to consider imposing death; but if they did not, they could not consider death, adding in that event, "the sentence must be for imprisonment for life or imprisonment for life without parole." (O.R. 82). When reviewing the instructions as a whole, we find counsel was not ineffective for failing to raise this as error on direct appeal.

Likewise waived for consideration on post-conviction appeal is Petitioner's contention the court erred in omitting a portion of second-stage instruction number 10, concerning Petitioner's confession to other crimes used to support the continuing threat aggravating circumstance. After examining the instruction, we find counsel was not ineffective for failing to raise this as an issue on appeal.

### X.

 For his ninth and last proposition of error, Petitioner alleges that even if none of the other propositions warrants relief individually, their cumulative effect warrants relief. This claim was raised and disposed of on direct appeal, and is therefore *res judicata*. Assuming Petitioner incorporates his ineffective counsel claim in this as well, we find no merit to that complaint. We have determined that all but one of the propositions are either waived for failure to present on direct appeal or are *res judicata*. We found no

error in the one. There is no merit to this claim.

### XI.

In light of the above, we find no need for an evidentiary hearing. We therefore deny Petitioner's request for one.

Accordingly, the order of the district court denying post-conviction relief is AFFIRMED.

JOHNSON, P.J., and STRUBHAR, J., concur.

CHAPEL, V.P.J., and LANE, J., concur in results.

---

8. The instruction informed the jury a defendant is presumed to be innocent of the aggravating circumstances, and if they entertain a reasonable doubt as to the defendant's guilt of the aggravators, they must return a verdict of life imprisonment.