**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 18 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

      v.

ENRIQUE PEDRAZA,

      Defendant - Appellant.

No. 98-2148

(D. New Mexico)

(D.C. No. 97-CIV-1519-SC)

**ORDER AND JUDGMENT** *

Before **ANDERSON** , **McKAY** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Enrique Pedraza, a federal prisoner appearing pro se, seeks a certificate of appealability to appeal the district court's dismissal of his motion to vacate, set

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255. We deny a certificate of appealability and dismiss the appeal.

## BACKGROUND

Following a jury trial, Pedraza was convicted of one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). On direct appeal, we affirmed his conviction. However, we remanded for findings respecting Pedraza's factual objections to the presentence report as required by Fed. R. Crim. P. 32(c)(3)(D). United States v. Pedraza, 27 F.3d 1515, 1530-31 (10th Cir. 1994). Pedraza subsequently appealed the district court's ruling on remand, and we affirmed in an unpublished order and judgment. United States v. Pedraza, No. 94-2267, 1995 WL 755265 (10th Cir. Dec. 21, 1995). Pedraza also petitioned for, and was denied, certiorari on both of our decisions. See Pedraza v. United States, 517 U.S. 1162 (1996) (order denying certiorari); Pedraza v. United States, 513 U.S. 1004 (1994) (same). The second denial of certiorari was issued on April 22, 1996.

Nineteen months later, on November 26, 1997, Pedraza filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. In addition to restating the points made on direct appeal, Pedraza disputed the court's

jurisdiction and argued ineffectiveness of counsel. Finding that the limitations period imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) had run on April 23, 1997, the district court dismissed Pedraza's motion as untimely. R. Vol. I, Tab 4 at 2 (citing United States v. Simmonds, 111 F.3d 737, 745-46 (10th Cir. 1997)).

Pedraza then filed a motion for reconsideration, arguing that 1) applying a time bar to habeas actions constituted an unconstitutional suspension of the writ, and 2) a government impediment prevented him from making an earlier filing. Regarding the impediment, Pedraza claimed that he was not able to file his § 2255 motion until he received a full set of trial transcripts. Detailing his efforts to obtain the transcripts, he attached a July 1995 letter from the Public Defender's office which acknowledged Pedraza's request for the transcripts and which suggested that they could be sent after the appeal was complete. R. Vol. I, Tab 5, Exh. A. Pedraza further described attempts to obtain a set of transcripts from a codefendant's attorney, which "after numerous phone conversations" over a course of months "turned out to be a wasted effort" as the attorney ultimately referred them to the Public Defenders. Id. Tab 5 at 5. Next, according to Pedraza's motion, during the summer of 1996, the Public Defenders "decided to

copy the set they had and sen[d] [1] them to movant." Id. However, "while the [Defender's] office was being relocated, a number of boxes were misplaced some of which contained movant's transcripts, by the time they were located and ready to be copied, several more months had gone by." Id. Eventually, in late January 1997, Pedraza received a set from another codefendant. However, that set did not include the transcript of his sentencing hearing; the Public Defenders sent him a copy of the sentencing hearing transcript in February 1997. See Transmittal Letter, R. Vol. I, Tab 5, Exh. C. Finally, the set of transcripts was missing some thirty pages which Pedraza did not obtain until the summer of 1997. Thus, he argued that the limitations period did not begin to run until summer 1997 when he received a complete set of the transcripts.

The district court denied the motion for reconsideration, concluding the statute of limitations did not violate the Suspension Clause. [2] The court then found that Pedraza had failed to establish that 1) the lack of a complete transcript set prevented him from making his § 2255 motion, or 2) the government had caused the alleged delay in violation of the Constitution or other law. The district court also denied Pedraza's application for a certificate of appealability.

---

[1]Pedraza mistakenly typed "sent"—but as the context and other exhibits make clear, the Public Defenders never sent the trial transcripts.

[2]On appeal, Pedraza does not contest this portion of the district court's ruling.

## DISCUSSION

The AEDPA governs the commencement of the limitations period, providing that the one-year limitations period "shall run" from the latest of four enumerated dates. 28 U.S.C. § 2255. In effect, the statutory limitations period "begins to run in accordance with individual circumstances that could reasonably affect the availability of the remedy." Miller v. Marr , 141 F.3d 976, 978 (10th Cir. 1998) (construing the one-year limitations period governing § 2254 petitions, which is substantially identical to the period under § 2255). However, we have recognized that under appropriate extraordinary circumstances equitable tolling principles may provide a basis for tolling the limitations period once it has begun to run. Id. (recognizing that the limitation period imposed by the AEDPA is not jurisdictional and may be subject to equitable tolling).

In this case, Pedraza argues that the limitations period did not begin to run until the summer of 1997, when he finally obtained a complete set of trial transcripts. Relying on § 2255(2), he contends that government action prevented him from making his motion. This argument is distinct from the argument that the AEDPA's limitation period should be tolled based on equitable principles. However, because we must construe pro se pleadings liberally, we will read Pedraza's motion to contain an equitable tolling claim as well. See Haines v. Kerner , 404 U.S. 519, 520-21 (1972).

1. <u>Commencement of the Period under the Statute</u>. Pedraza argues that, since the Public Defenders are government employees, their actions (or inaction) in failing to send him the trial transcripts must be attributed to the government.

Even though Public Defenders are, technically, government employees, the "government [is not] meaningfully an employer responsible for the care with which the lawyer does his work." <u>Sullivan v. Freeman</u>, 944 F.2d 334, 336 (7th Cir. 1991) (analyzing whether the Federal Tort Claims Act applies to malpractice claims against Public Defenders). Rather, "[i]n relation to the federal government a federal defender is functionally an independent contractor," and, under our adversarial system, the public defenders' actions vis à vis their clients are generally beyond the government's power to control. <u>Id.</u> Certainly, were the alleged delays caused by a privately retained attorney, there would be no contention that the government should be held responsible.

Furthermore, while Pedraza does attach one 1995 letter which substantiates his early request that the public defenders send him the transcripts, his own statement of the facts indicate that, during part of the period in which the limitations period was running, he apparently made no attempt to obtain the transcripts from the public defenders. Instead, he sought to secure them from the attorney of a codefendant. R. Vol. I, Tab 5 at 5. Under the circumstances,

Pedraza has simply failed to show that government action prevented him from making his motion.

2. <u>Equitable Tolling</u>.  Because the statute may be subject to principles of equitable tolling, we also consider Pedraza's claims that he diligently attempted to obtain the transcripts, and that it was impossible to make his motion without them.

In this case, we are simply not convinced that Pedraza has demonstrated either the diligence or the prejudice necessary to invoke equitable tolling.  While he may have assumed that the limitations period would not apply under the circumstances of his case, he did so at his peril.  Instead of assuming the onus would fall elsewhere, once the difficulties and delays in obtaining the transcripts became apparent, Pedraza could have made a motion to the court for an order directing his attorneys to send it to him, or he could have moved for an extension of time to file his habeas motion. [3]

Moreover, despite Pedraza's bald statement to the contrary, his petition is not "replete[] with references to the transcripts."  Appellant's Appl. for Cert. of Appealability at 7.  Rather, the petition generally restates the claims made on direct appeal, together with claims regarding his attorney's failure to follow his

---

[3]Pedraza claims to have contacted the clerk of the court for assistance, only to be referred back to his attorneys.  However, he provides no documentation for that contact.

directions. When Pedraza does make specific complaints about his attorney's alleged ineffective trial performance, he provides no citation to the record. [4] Thus, our reading of Pedraza's petition reveals that the transcript may have provided some modicum of information, but, in fact, the petition could have been substantially written without it. [5]

Thus, having thoroughly reviewed Pedraza's brief, his application for a certificate of appealability, the district court's order, and the record before us, we conclude that Pedraza's motion is time-barred, and that he has failed to make a substantial showing of the denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2) for the issuance of a certificate of appealability. [6]

---

[4]Of the ten claims of attorney ineffectiveness set out in Pedraza's petition, only three refer to specific trial exhibits or instances (without page citation, however), and one of the three references was set out in our opinion on direct appeal. Pedraza, 27 F.3d at 1525 (applying a plain error review "[b]ecause Defendants failed to object or request . . . a limiting instruction").

[5]We do not accept Pedraza's conclusory allegations that the lack of a complete set of transcripts prevented him from making his motion. See Ruark v. Gunter, 958 F.2d 318, 319 (10th Cir. 1992) (stating that "naked allegations" are not cognizable under federal habeas corpus statutes, and that "we are not compelled to allow" habeas claimants to search trial transcripts for error); cf. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be granted").

[6]As we noted in our prior opinion, there was "overwhelming evidence of [Pedraza's] guilt in this case." Pedraza, 27 F. 3d at 1526. Thus, even if the limitations period did not bar his § 2255 motion, we would find that the issues he raises do not demonstrate ineffectiveness resulting in prejudice or any other

(continued...)

- 8 -

Accordingly, we decline to issue a certificate of appealability, and DISMISS the appeal.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[6](...continued)
"substantial showing of the denial of a constitutional right."