**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 25 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL D. ROBERTS,

        Petitioner-Appellant,

v.

RON WARD, Warden, Oklahoma State
Penitentiary,

        Respondent-Appellee.

No. 98-6066
(D.C. No. CIV-96-1075-C)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **KELLY**, and **LUCERO**, Circuit Judges.

      Appellant Michael Roberts appeals the denial of his federal habeas corpus petition.

Mr. Roberts was convicted in state court of murdering an elderly woman during an

attempted burglary by stabbing her in the head and slitting her throat. Before trial, he

confessed to the murder and a number of other burglaries. The defense theory during trial

was that Mr. Roberts had falsely confessed to an accusation of crimes he did not commit.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

The jury rejected that defense and convicted him of murder in the first degree and burglary in the first degree. He received the death penalty for the murder count. Having exhausted his state remedies, Mr. Roberts filed his habeas petition in the federal district court which ultimately denied relief.

On appeal, Petitioner raises numerous claims: (1) failure to disclose exculpatory evidence; (2) the prosecution knowingly presented false testimony; (3) improper denial of investigative resources; (4) failure to instruct the jury on first-degree manslaughter; (5) erroneous jury instructions; (6) duplicitous aggravating factors; (7) the state's "continuing threat" aggravator is unconstitutionally vague as applied; (8) improper admission of unadjudicated crimes during the penalty phase; (9) ineffective assistance of counsel; (10) cumulative error; and (11) improper denial of evidentiary hearing and discovery in the federal district court. Finding no error, we affirm.

## I. Facts

Eighty-year-old Lula Mae Brooks of Oklahoma City was found dead on her living room floor on January 16, 1988. There were signs of forced entry into the house. She had been stabbed in the head and neck, and her throat was slit. At the scene, authorities found a knife and shoeprints which showed a diamond pattern consistent with a Converse athletic-type shoe.

Soon thereafter, the authorities arrested a juvenile who was a suspect in numerous burglaries committed in the victim's neighborhood. The juvenile implicated Petitioner Michael Roberts in several property crimes. The police arrested Mr. Roberts during a routine traffic stop. A knife was taken from him during the arrest. Mr. Roberts' knife, shoes, and laces were submitted for laboratory analysis along with blood samples from Mr. Roberts and Ms. Brooks. The knife and shoes showed presence of blood, but the authorities could not type it. The pattern on the bottom of Mr. Roberts' shoes was also consistent with the pattern found at the murder scene. Furthermore, Mr. Roberts told the police that he had known Ms. Brooks for years.

During the course of several interviews with detectives, Mr. Roberts eventually confessed to the Brooks crimes as well as a number of other burglaries and rapes. Mr. Roberts gave three accounts of what transpired with Ms. Brooks. He first said he entered her house the day after the murder, where he noticed disarray and a chalk outline of a body. After learning there was no chalk outline, Mr. Roberts changed his story. In the second version, he said he was walking to the store on January 16, 1988, when he heard a noise inside Ms. Brooks' house. Mr. Roberts alleged he entered the house to see her lying on the floor, with blood gushing from her throat, but became scared and ran out of the house. Petitioner then retracted this story, and in his last statement admitted he had decided to burglarize Ms. Brooks' house. He approached the house to find the front door partially open. As he entered, Ms. Brooks approached him with a knife, saying she had

been robbed before and did not want it to happen again. Mr. Roberts said he grabbed the hand holding the knife and pulled out his own knife and stabbed her in the neck. He next claimed he helped her to the bathroom to attend to the wound but that Ms. Brooks then attacked him from behind. He threw her down on the floor, put a covering over her head, and slit her throat after she asked him to "finish the job."

At trial, Mr. Roberts maintained he had falsely confessed to the murder and someone else had committed the crime. The jury rejected that defense and convicted him of murder in the first degree and burglary in the first degree (third strike). During the penalty phase, the jury found the existence of three aggravating circumstances: the murder was committed to avoid arrest and prosecution for the burglary; Mr. Roberts had previously been convicted of a felony involving the use or threat of violence; and there was a probability he would commit criminal acts of violence that would constitute a continuing threat to society. The jury recommended death for the murder count and 350 years for the burglary count. The trial court agreed and sentenced Mr. Roberts accordingly. The Oklahoma Court of Criminal Appeals affirmed on direct appeal, *Roberts v. State*, 868 P.2d 712 (Okla. Crim. App. 1994), and then affirmed the denial of Mr. Roberts' application for post-conviction relief, *Roberts v. State*, 910 P.2d 1071 (Okla. Crim. App. 1996).

**II. Applicability of the AEDPA to Mr. Roberts'
Petition for a Writ of Habeas Corpus**

As a preliminary matter, we address Petitioner's claim that his petition should not be governed by the standards of review set forth in Chapter 153 of the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. §§ 2241-55.[1]  Specifically, Mr. Roberts argues 28 U.S.C. § 2254, as amended, does not apply to his case because, even though he filed his federal habeas petition *after* the effective date of the AEDPA, the underlying constitutional violations he complains of occurred *before* the AEDPA's enactment.

We have not squarely addressed the issue presented by Mr. Roberts.  We have, however, implicitly rejected Mr. Roberts' argument by applying the AEDPA to other cases with the same procedural posture.  *E.g., Gregg v. Scott*, No. 98-6049, 1999 WL 2515 (10th Cir. Jan. 6, 1999) (unpublished); *Judkins v. Hargett*, No. 98-6113, 1998 WL 883332 (10th Cir. Dec. 18, 1998) (unpublished); *Miller v. Champion*, 161 F.3d 1249 (10th Cir. 1998); *United States v. Nelson*, No. 98-3144, 1998 WL 811783 (10th Cir. Nov. 24, 1998) (unpublished); *United States v. Pedraza*, No. 98-2148, 1998 WL 802283 (10th Cir. Nov. 10, 1998) (unpublished); *Goudeau v. Ray*, No. 97-5247, 1998 WL 778718 (10th Cir. Nov. 9, 1998) (unpublished); *Hoggro v. Boone*, 150 F.3d 1223 (10th Cir. 1998); *Miller v. Marr*, 141 F.3d 976 (10th Cir. 1998).  "The amendments to chapter 153 were assumed and meant to apply to the general run of habeas cases only when those

---

[1]Chapter 154 of the AEDPA clearly does not apply because Oklahoma is not a qualifying state for purposes of the special capital case provisions of the AEDPA.  *Moore v. Reynolds*, 153 F.3d 1086, 1095 (10th Cir. 1998).

cases had been filed after the date of the [AEDPA]." ***Lindh v. Murphy***, 521 U.S. 320, ___, 117 S. Ct. 2059, 2063 (1997). We conclude the AEDPA applies.

### III. The Standards of Review

In reviewing a denial of a petition for habeas corpus, we are generally subject to two different standards of review. If the claim was not heard on the merits by the state courts, and the district court made its own determination, then we review the district court's conclusions of law *de novo* and its findings of fact, if any, for clear error. ***Hickman v. Spears***, 160 F.3d 1269, 1271 (10th Cir. 1998). But when reviewing the merits of a claim already decided by the state court, we are bound to deny relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" if: (1) the state court decision is in square conflict with Supreme Court precedent which is controlling on law and fact; or (2) if no such controlling decision exists, the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant Supreme Court precedents, or if its decision rests upon

an objectively unreasonable application of established principles to new facts. In short, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable. *Sexton v. French*, 163 F.3d 874, 880 (4th Cir. 1998); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir.1998); *White v. Scott*, 141 F.3d 1187, No. 97-6258, 1998 WL 165162, at *2 (10th Cir. 1998) (unpublished disposition). Quite simply, the "AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations." *Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

## IV. *Brady v. Maryland* Violations -- Failure to Disclose Exculpatory Evidence

Mr. Roberts first claims the prosecution failed to produce exculpatory evidence prior to trial. To establish a *Brady* violation a petitioner must "prove that [1] the prosecution suppressed the evidence, [2] the evidence would have been favorable to the accused, and [3] the suppressed evidence was material." *Moore v. Reynolds*, 153 F.3d 1086, 1112 (10th Cir. 1998). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 681 (1985). The determination of materiality must be made on the basis of the entire

record, considering all the undisclosed evidence collectively. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

A transcript of Mr. Roberts' confession to the Brooks murder was presented to the jury during the guilt phase, and a videotape of his burglary and rape confessions was played during the penalty phase. The murder confession was of course relevant to whether Petitioner committed the murder, and the other confessions were relevant to the "continuing threat to society" aggravator. Mr. Roberts argues evidence withheld by the prosecution would have demonstrated all the confessions were false.

He theorizes, first, there was undisclosed evidence contradicting his confessions to the other burglaries and rapes. That evidence, he claims, severely calls into question the jury's finding of a "continuing threat" during the penalty phase. Petitioner also claims the evidence of these false confessions is relevant to the guilt phase because it demonstrates a pattern of false confessions, thus calling into question his confession on the murder charge.

To support the prosecution's claim Mr. Roberts was a continuing threat to society, the prosecutor listed in a Bill of Particulars twenty specific acts involving burglary and rape. As we noted above, these acts were drawn from a videotaped confession Mr. Roberts gave to the police. The prosecution called eleven of the victims to corroborate the taped confessions. Of those eleven, eight testified their assailant was black (Petitioner's race); one testified he was "dark"; and two gave no indication one way or the

other.  One of the witnesses, Ms. Inez Dufford, testified that her attacker was a "dark man" and that he had "cut her from one ear to the next."  But Mr. Roberts learned after trial that Ms. Dufford had in fact previously identified her attacker as a white man.  Because this information was not turned over to the defense, Mr. Roberts claims he suffered prejudice because he was unable to use the information to impeach Ms. Dufford during the penalty phase or in support of his pattern-of-false-confessions theory.

This claim fails from the outset because Mr. Roberts has not shown the prosecution actually suppressed this information.  The Oklahoma Court of Appeals concluded on direct appeal that both parties had acknowledged at oral argument that the Oklahoma County District Attorney's Office "has an open file policy which was in effect at the time [Petitioner] was tried" and that Mr. Roberts' counsel had acknowledged the prosecutor's office "had cooperated with him in his discovery requests."  *Roberts*, 868 P.2d at 719 n.2.  The court concluded Mr. Roberts had "cited nothing to this Court in the record to support his allegations the prosecution withheld favorable evidence."  *Id.* at 719.

Our review of the Oklahoma court's conclusion is deferential.  28 U.S.C. § 2254. A *Brady* claim is a mixed question of fact and law.  *Banks v. Reynolds*, 54 F.3d 1508, 1516 (10th Cir. 1995).  Therefore, we must ask whether the court's determination "involved an unreasonable application of federal law to the facts of the case."  *White*, 1998 WL 165162, at *2.  "'[A]n application of law to facts is unreasonable only when it

can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect. In other words, we can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists.'" *Id.* (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Applying the deferential standard of review, we cannot conclude the Oklahoma court was wrong. Mr. Roberts has offered nothing to contradict the state court's conclusion.

Mr. Roberts also claims to have been unaware that another of the burglary victims listed in the Bill of Particulars, Raymond Long, had informed prosecutors prior to trial that "he would hurt the state's case because Michael Roberts was not his attacker." Mr. Long never actually testified. Nevertheless, counsel again claims had the defense known of Mr. Long's previous statement it could have argued to the jury that yet another of Petitioner's burglary confessions was false, thus calling into question his confession regarding the murder. This claim appears to have satisfied the first two prongs of *Brady*, and we shall consider this claim collectively with the others when determining materiality.

Appellant next argues the prosecution withheld police reports which showed that one of the officers who interviewed Mr. Roberts, Detective Bob Shahan, had met with him on more than one occasion. During trial, Petitioner had claimed, and Detective Shahan had denied, they had met more than once. Proof that they had met on several occasions was important, Mr. Roberts claims, because it would help explain how he was

- 10 -

familiar with the various details of some of the other burglaries to which he had confessed. As before, counsel claims his false confession theory would have been more convincing had the jury understood the detective on the case had been going over the details of the burglaries with Mr. Roberts during many sessions.

This claim also fails at the outset. The Oklahoma court again found that Mr. Roberts had failed to show the prosecution actually suppressed this information. **Roberts**, 910 P.2d at 1082. Moreover, Petitioner presented no evidence to the district court or to us demonstrating the "state court decision [was] so clearly incorrect that it would not be debatable among reasonable jurists." **White**, 1998 WL 165162, at *2.

Finally, Petitioner claims the prosecution failed to disclose that other individuals were initially identified as suspects in the murder of Ms. Brooks. He argues the fact other suspects existed and other leads were developed "would have fit nicely into the already viable false confession/someone else did it defense."

This claim fails for the same reason as the others. The Oklahoma court found that Mr. Roberts had "not demonstrated this information was not provided to trial counsel." **Roberts**, 910 P.2d at 1081. And again, quite simply, he has failed to demonstrate at the federal habeas level that the Oklahoma court's conclusion on this point was wrong. He merely states that "[i]t *appears* the existence of these other suspects was not revealed to defense counsel." He offers no citations to the record to support this bold assertion.

- 11 -

Given that most of Mr. Roberts' **Brady** claims failed at the initial level of the test, only his claim regarding witness Raymond Long's statement may proceed to the materiality analysis. We must address whether that information was "material," that is whether there is a reasonable probability that had the evidence been disclosed to the defense, the result of the trial would have been different. **Bagley**, 473 U.S. at 681.

The Oklahoma court concluded that the "presentation of the evidence he now alleges exists but was withheld would not have undermined confidence in the jury's sentence." **Roberts**, 868 P.2d at 720. The fact that one of the confessions was not corroborated by Raymond Long was inconsequential when viewed in light of the "overwhelming evidence presented in the other instances." **Id.** During the penalty phase of the trial, "[w]hether [Roberts] committed 20, 14, or 11 additional robberies or burglaries, there was ample evidence to convince a jury . . . the probability existed [Roberts] would commit criminal acts of violence that would constitute a continuing threat to society." Furthermore, the fact that one confession of 20 may have been in error, would not lead a reasonable jury to conclude Petitioner had a pattern of false confessions. Mr. Roberts has not presented any evidence to indicate the contrary.

## V.  Knowing Use of False Testimony at Sentencing

Mr. Roberts next claims the prosecution knowingly presented false testimony during the sentencing stage of the trial in violation of *Napue v. Illinois*, 360 U.S. 264

(1959), and its progeny. To succeed on a *Napue* claim, a defendant must establish the prosecution knowingly obtained the false testimony or failed to correct testimony it knew was perjured. *Id.* at 269; *United States v. Vaziri*, 164 F.3d 556, 563 (10th Cir. 1999). The knowing use of false testimony is material if there is any reasonable likelihood that the false testimony, coupled with the evidence properly presented at trial, could have affected the judgment of the jury. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

Mr. Roberts claims the prosecutor called Ms. Inez Dufford during the penalty phase and knowingly elicited false testimony that her attacker was a dark man, when the prosecutor knew that Ms. Dufford had previously stated her attacker was a white man. Petitioner also argues the government knowingly presented false testimony regarding his confession to the Raymond Long robbery. Mr. Roberts contends the state knew he could not possibly be Mr. Long's attacker, so in proceeding with that confession during the penalty phase, it violated *Napue*.

This claim must fail because it is raised for the first time in this appeal. The *Napue* argument was neither presented to the Oklahoma courts nor raised in the federal habeas petition. Absent compelling reasons, we do not consider arguments that were not presented to the district court. *Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994). Throughout these proceedings, Petitioner has been represented by counsel, and we see no reason to deviate from the general rule. Furthermore, this claim also fails under the procedural default doctrine. Having failed to present the claim to the state courts, there is

a procedural default in the state court and "a procedural default for purposes of federal habeas." *Harris v. Champion*, 48 F.3d 1127, 1131 n.3 (10th Cir. 1995).

Mr. Roberts urges the claim was previously raised, but his own arguments on the matter defeat him. He simply points to his *Brady* claims and argues that such claims also encompass a *Napue* claim. A subsumed claim is not the same as an articulated claim; moreover, to accept his argument we would have to assume all situations provoking *Brady* issues include the prosecution's use of false testimony. We will not make that assumption.

## VI. State Court's Denial of Investigative Assistance

Mr. Roberts next claims the Oklahoma courts denied him investigative resources in violation of the Constitution. He contends because his defense theory was that he had falsely confessed to a crime he did not commit, he was entitled to an investigator to locate the true perpetrator. An indigent defendant is entitled to the "basic tools of an adequate defense," *Ake v. Oklahoma,* 470 U.S. 68, 77 (1985), including investigative services, *Johnson v. Gibson*, 164 F.3d 496, 501 (10th Cir. 1998).

Nevertheless, this claim fails for two reasons.[2] First, it appears Mr. Roberts *served but did not file* a brief styled "Motion to Provide Public Funds for Investigative Services."

---

[2]The Oklahoma courts did not rule on this claim on the merits, so the deferential review normally afforded under the AEDPA is inapplicable here. Instead, an independent review of the merits is necessary.

The original record of the trial contains no such document, and the copy provided by Mr. Roberts bears no court filing stamp. There is no order disposing of the motion, and the transcripts likewise fail to indicate that the motion was ever denied in a hearing or at trial. There can be no constitutional violation of an accused's rights to the basic tools of an adequate defense if counsel never asked for those tools.

In any event, even if we were to assume counsel had filed the motion, it would not in itself provide the specificity required under the case law. The copy of the motion supplied to us states in pertinent part:

> The major contention of the defendant in the defense of his case is that it was someone other than the defendant who committed the murder for which defendant is charged. The defendant is aware of another suspect whom he believes to be responsible for the murder for which he is charged. To locate and obtain necessary evidence regarding this suspect the services of a private investigator are crucial . . . .

"An indigent defendant requesting appointment of an investigator or expert bears the burden of demonstrating with *particularity* that 'such services are necessary to an adequate defense.'" ***Matthews v. Price***, 83 F.3d 328, 335 (10th Cir. 1996) (quoting ***United States v. Greschner***, 802 F.2d 373, 376 (10th Cir. 1986)). The bare assertion that an unnamed person was the actual perpetrator is wholly insufficient. Where a defendant has "offered little more than undeveloped assertions that the requested assistance would be beneficial, we find no deprivation of due process in the trial judge's decision." ***Caldwell v. Mississippi***, 472 U.S. 320, 323 n.1 (1985). To hold otherwise would permit expenditure of the public weal on little more than figments of the imagination.

## VII.  Failure to Instruct on First-Degree Manslaughter
## Due to Diminished Capacity

Mr. Roberts next claims the state trial court erred in failing to *sua sponte* instruct the jury on first-degree manslaughter due to diminished capacity.  During the murder confession, he claimed he was high on drugs at the time of the murder.  Based on that information, he now believes the trial court should have instructed the jury on the lesser offense of manslaughter.

The district court rejected this claim[3] and in doing so adopted the approach taken by the Oklahoma courts in similar cases.  The court noted that Mr. Roberts did not argue he acted due to diminished capacity.  In fact, his theory of the case at trial was that his murder confession was completely false and the crime was committed by someone else entirely.  Thus, the defense theory left the jury with two options.  Either Mr. Roberts killed Ms. Brooks with malice aforethought or he was not present at the time of her death.  By electing the defense predicated on his absence from the scene of the crime, he was not entitled to any instructions on lesser offenses.  ***Johnson v. State***, 911 P.2d 918, 928 (Okla. Crim. App. 1995).

Relying on ***Beck v. Alabama***, 447 U.S. 625 (1980), Mr. Roberts suggests ***Johnson v. State*** is wrongly decided and it was unconstitutional for the court to force the jury into an "all-or-nothing" decision whether to convict him of a capital offense and sentence him

---

[3]***See*** footnote 2.

- 16 -

to death or acquit him altogether.  We recently rejected an argument identical to Mr. Roberts' in *United States v. McVeigh*, 153 F.3d 1166, 1197 (10th Cir. 1998).  There, we distinguished *Beck*, stating:  "This case is unlike *Beck*, however, because the jury here was not compelled to impose the death penalty on [the defendant] if it convicted him of the charged offenses; rather, it had the opportunity to reject the death penalty during the sentencing phase."  *McVeigh*, 153 F.3d at 1197; *see also Johnson* 164 F.3d at 507.  The facts of our case on this point are analogous to *McVeigh*, and thus, further discussion is unnecessary.

## VIII.  State Court's Erroneous Jury Instructions

### A.

Mr. Roberts next claims the state court presented the jury with two improper instructions.[4]  He first challenges an instruction given in the penalty phase because it failed to inform the jury that life imprisonment *without* parole was an option.  The instruction states:

> If, upon consideration of all the evidence, facts, and circumstances in the case, you entertain a reasonable doubt of the guilt of the defendant of the charges made against him in the Bill of Particulars, you must give him the benefit of that doubt and return a sentence of life imprisonment.

---

[4]*See* footnote 2.

- 17 -

Presumably, Mr. Roberts complains the jury thought its only options were death and life imprisonment *with* the possibility of parole; therefore, it selected death as a preference to taking a chance Mr. Roberts might be released in the future.[5]

We are unpersuaded. In a habeas proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden. *Lujan v. Tansy*, 2 F.3d 1031, 1035 (10th Cir. 1993). A state conviction may only be set aside on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair that a fair trial was denied. *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990). Any error in this case is harmless because two other instructions given during the penalty phase corrected the mistake. The first instruction told the jury that "under the law, the defendant must be punished by death, imprisonment for life, or imprisonment for life without parole." *Roberts*, 910 P.2d at 1084. And the fifth instruction, which defined an aggravating circumstance, informed the jury that if they found the existence of an aggravating circumstance, they would be authorized to consider imposing death; but if they did not, they could not consider death, adding in that event, "the sentence must be for imprisonment for life or imprisonment for life without parole." *Id.*

**B.**

_____

[5]Since November 1987, Oklahoma has required trial courts to instruct juries in capital cases they have the option of imposing life without the possibility of parole. *Salazar v. State*, 852 P.2d 729, 737 (Okla. Crim. App. 1993).

Mr. Roberts next argues the trial court erred when it chose not to instruct the jury that "a confession by one in custody and charged with an offense should be carefully scrutinized and received with great caution." The instruction was part of Oklahoma Uniform Jury Instruction Crim. 810, an instruction that Mr. Roberts had asked the court to submit to the jury in its entirety. The court declined to do so, instructing on the rest of OUJIC 810, but omitting the sentence Mr. Roberts believes was specially important because of his false confession theory.

This claim also fails. The actual instruction as given, when taken as a whole, sufficiently advised the jury to closely scrutinize the circumstances in which a confession is given and to disregard it should they conclude it was not made freely or voluntarily, or it was made based on improper inducements, threats, or coercion. It cannot be said that the failure to add the sentence sought by the defendant "so infected the trial that the resulting conviction violates due process." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995).

## IX. Duplicitous Aggravating Factors

Mr. Roberts claims the state trial court erred because it permitted the prosecution to allege duplicative aggravating factors, namely the "prior violent felony" and "continuing

- 19 -

threat" aggravators.[6]  We recently rejected the identical argument in ***Johnson v. Gibson***,

164 F.3d at 507-08.  We stated:

> [T]he federal district court correctly noted[] the aggravating circumstance of
> future dangerousness and prior felony conviction are not duplicative.  The
> former is supported by evidence of the petitioner's potentiality for future
> dangerous acts, the latter by evidence of petitioner's past acts. . . .
> [A]lthough the jury may have relied on some of the same evidence--namely
> petitioner's past felony convictions--in finding the aggravating circumstance
> of future dangerousness, it did not necessarily have to find one in order to
> find the other.

We conclude the same analysis applies here.


### X.  Unconstitutionality of "Continuing Threat" Aggravator

Petitioner next argues the "continuing threat" aggravator is unconstitutionally

vague because it "does not narrow the class of such persons eligible for death."[7]  Once

again, we have already decided the identical claim in a previous decision.  In ***Nguyen v.***

***Reynolds***, 131 F.3d 1340 (10th Cir. 1997), the petitioner challenged Oklahoma's

"continuing threat" factor as being unconstitutionally vague.  We rejected the challenge,

stating that the "fact Oklahoma chooses to grant a sentencing jury wide discretion to make

a predictive judgment about a defendant's probable future conduct does not render the

sentencing scheme in general, or the continuing threat factor in particular,

unconstitutional."  ***Id.*** at 1354.  We went on to hold that "the question of whether a

---

[6]***See*** footnote 2.

[7]***See*** footnote 2.

defendant is likely to commit future acts of violence has a 'common-sense core of meaning' that criminal juries are fully capable of understanding." *Id.* In response, Mr. Roberts simply arrogates that *Nguyen* "was wrongly decided." We do not think so.

## XI. State Court's Improper Admission of Unadjudicated Crimes During Penalty Phase

Mr. Roberts maintains the state trial court erred when it admitted evidence of unadjudicated crimes in support of the continuing threat aggravating circumstance.[8] During the penalty phase, the prosecution alleged twenty specific acts involving rape and burglary, based on a videotaped confession Mr. Roberts gave to the police. The prosecution also called eleven of the victims to corroborate the taped confessions. Mr. Roberts claims he was denied due process because the prosecution was allowed to rely on these unadjudicated offenses.

Once again, he raises an argument we rejected long ago. *E.g., Hatch v. State of Okla.*, 58 F.3d 1447, 1465 (10th Cir. 1995) (holding that the admission of unadjudicated offenses at a capital sentencing proceeding does not violate due process); *Williamson v. Ward*, 110 F.3d 1508, 1523 (10th Cir. 1997) (following *Hatch*); *Johnson v. Gibson*, 164 F.3d at 508 (same). Mr. Roberts' response again is the unsupported assertion that *Hatch* "is wrongly decided." Again we disagree.

_____

[8]*See* footnote 2.

## XII. Ineffective Assistance of Counsel

Mr. Roberts presents several claims of ineffective assistance of counsel. To prevail on these claims, he must demonstrate his counsel's performance was deficient and that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984).

### A.

Mr. Roberts first asserts his trial counsel did "almost nothing to investigate, bolster, and prepare" his false confession defense. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary, *Kimmelman v. Morrison*, 447 U.S. 365, 384 (1986), and in a capital case, "counsel's duty to investigate all reasonable lines of defense is strictly observed," *Williamson*, 110 F.3d at 1514.

The Oklahoma courts rejected this claim, finding that Petitioner had "presented nothing more than mere speculation counsel's investigation and preparation consisted of nothing more than the time stated in the affidavit for attorney's fees. . . . The trial record showed a seasoned, experienced counsel performing an admirable job at trial." *Roberts*, 910 P.2d at 1079. Mr. Roberts presented no evidence to the federal district court or to us which could lead us to conclude the Oklahoma court's decision "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). His argument consists of

no more than bare assertions, unsupported by references to the record. Furthermore, he fails to adequately allege how additional preparation would have changed the outcome of the defense. Petitioner, failed to meet his burden, and we thus reject his argument.

**B.**

Mr. Roberts next alleges counsel failed during the penalty phase to discuss his history of drug, physical, and emotional abuse. Citing several cases from our circuit, the Oklahoma courts rejected this claim, holding that counsel could not present much of this information because Mr. Roberts had failed to provide it. ***E.g., United States v. King***, 936 F.2d 477, 480 (10th Cir. 1991) (adequacy of attorney's action depends on defendant's own action or inaction); ***United States v. Rhodes***, 913 F.2d 839, 844 (10th Cir. 1990) (same); ***United States v. Miller***, 907 F.2d 994, 998 (10th Cir. 1990) (same). In any event, it is clear from the record that counsel did attempt to portray Petitioner as a good and caring person who had suffered great cruelties as a child at the hands of his stepfather. Mr. Roberts' wife, sister-in-law, brother, mother, and his probation counselor all testified to his basic good nature, his love for family, and his difficult childhood and adolescence. Based on these facts, it is difficult to conclude that reasonable jurists would all find the state court's conclusion unreasonable.

**C.**

Petitioner also argues his attorney was ineffective during the penalty phase because counsel "distanced himself from the defendant" by calling Mr. Roberts a "criminal, easy,

and dumb" while referring to himself as "court appointed" and not "the bad guy."  He also contends counsel was ineffective because he chose not to argue Mr. Roberts should receive life imprisonment *without* parole.

Once again, the Oklahoma courts rejected these claims.  The court was not "convinced trial counsel attempted to distance himself from Petitioner."  The court further noted that to "tell the jurors counsel was court-appointed or to describe Petitioner as a criminal, illegitimate or below normal intelligence could as easily be interpreted as an attempt to show the jurors counsel was being frank and not misleading them." ***Roberts***, 910 P.2d at 1079.  Reference to Mr. Roberts' intelligence could also be construed as a plea for sympathy.  Furthermore, the court dismissed as "trial strategy" the decision to not argue for life imprisonment without parole. *Id.* at 1079-80.  Mr. Roberts has not presented, nor could we find, any evidence which could lead us to conclude the Oklahoma court's decision "is so clearly incorrect that it would not be debatable among reasonable jurists."

## XII.  Cumulative Error

Finally, Petitioner asserts the accumulation of all the errors committed in his case entitles him to habeas relief.  "Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." ***Moore***, 153

F.3d at 1113-14.  Because we have noticed only one error in the proceedings--the failure to instruct on life without parole--there can be no cumulative error.


## XIV.  Federal Habeas Court's Denial of Requests for an Evidentiary Hearing

Petitioner argues the federal district court erred when it denied his requests for an evidentiary hearing "as to the [federal habeas] application as a whole and specifically as to any issues not apparent from the existing record."  We review the district court's decision to deny this request for an abuse of discretion.  *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368 (10th Cir. 1997).

The AEDPA sets forth a new standard governing when a federal habeas court may grant a request for an evidentiary hearing.  The statute provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> (A) the claim relies on–
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; *and*
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Mr. Roberts has made no showing nor even alleged that any of the claims upon which he seeks a hearing "rely upon a new rule of constitutional law" or are based upon a "factual predicate that could not have been previously discovered." Petitioner was not entitled to an evidentiary hearing.

## XV. Federal Habeas Court's Denial of Requests for Discovery

Lastly, Mr. Roberts claims the federal district court erred when it denied his requests for discovery. Rule 6(a) of the Rules Governing Section 2254 Cases requires a habeas petitioner to show good cause before he is afforded an opportunity for discovery. A district court's decision on good cause is reviewed for an abuse of discretion. *Bracy v. Gramley*, 520 U.S. 138, ___, 117 S. Ct. 1793, 1799 (1997). Good cause is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate he is entitled to relief. *Harris v. Nelson*, 394 U.S. 286, 299 (1969); *Bracy*, 117 S. Ct. at 1799 (approving the *Harris* standard).

Once again, Mr. Roberts has failed to demonstrate he made specific allegations establishing good cause justifying discovery. In fact, on appeal, Petitioner offers no real argument to contest the district court's decision to deny discovery. *See United States v. Brown*, 164 F.3d 518, 521 (10th Cir. 1998) (arguments not briefed on appeal are not considered). Furthermore, given that Petitioner's habeas claims are clearly without merit

based on the papers and record below, it would appear his requests for discovery are without merit, and the district court did not abuse its discretion in denying them.

The judgment of the district court is **AFFIRMED** in all respects.

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge